James C. Crane, J.
Petitioners in this proceeding seek the intervention of this court to vacate and set aside an election of officers and directors at an alleged illegal meeting of the Democratic Organization of the County of Richmond, N. Y. Inc. (hereinafter referred to as the Organization) held at the clubhouse of the Organization on the 3rd day of January, 1961, questioning the legality of the right to hold office of the persons elected as directors and officers at said meeting. The petitioners further allege grievance and complaint in connection with the election of said individuals, based upon the following factors:
That prior to the meeting the books and records of the Organization were sought by the petitioners, the president and secretary respectively, in the clubhouse at 292 Van Duzer Street, Staten Island, N. Y., which were not located or available; that membership lists of the Organization were duly requested and not forthcoming; that the meeting called to order by the petitioner president on the 3rd day of January, 1961, was irregularly called and that no notice of such meeting had been given to the *1027 membership of the Organization; that shortly after the meeting was called to order by the president, demand was again made by the petitioner president for the aforesaid records, which were not produced. (The court infers from the papers that this latter demand was made upon the individuals, Louis Calazzo, the treasurer, and Joseph A. McKinney, the chairman of the board of directors of the corporation, who, incidentally, is the chairman of the Democratic County Committee.) That therefore it was impossible to determine who of those present were members and who were not, and alleging further the crowded condition of the meeting hall; that the meeting which was called to order by the president was duly and regularly adjourned for the purpose of accommodation of all of the members of the Organization who were to be notified of a new date by a notice card when the membership list was procured; that the meeting was properly adjourned; that thereupon Joseph A. McKinney, chairman of the board of directors, illegally and improperly held another meeting at which the aforesaid officers and directors were elected in violation of the by-laws of the Organization; that no roll call of the members was taken to determine if a quorum was present as provided in the by-laws and that upon information and belief some or all of those who participated in the alleged second meeting were not paid-up members of the Organization; that the failure of the furnishing of the membership list to the secretary prevented him from giving notice to the entire membership of the time and place of the meeting; that, upon information and belief, membership cards were distributed to individuals fraudulently and that persons who wished to pay their membership dues were prevented from so doing; that, upon information and belief, because of the failure on the part of individuals upon whom demand was made to produce the books and records, it was ‘ ‘ feared ’ ’ that they were not in proper form and that they have been tampered with and given to persons not entitled to the possession thereof; that, upon information and belief, other acts of fraud were practiced against the interest of the membership and the purposes of the corporation.
It is conceded by both petition and answer that the Democratic Organization of the County of Richmond, N. Y. Inc. was and still is a membership corporation, organized, created and existing under and by virtue of the Laws of the State of New York with its principal headquarters at 292 Van Duzer Street (wherein meetings and business affairs are held), in Staten Island, N. Y. It is also evident from the papers that Joseph M. Ajello was at all the times in question a member of the Democratic Organization of the County of Bichmond, N. Y. Inc. and *1028 was its duly elected president and that William L. Hemsworth was a member of the Organization and was its duly elected secretary and that one of the respondents, Joseph A. McKinney, was at all the times set forth in the petition chairman of the board of directors of the Organization.
The respondents for answer to the petition deny paragraphs “9”, “13”, “16”, “17”, “18”, “20” and “21” of the petition and set forth other denials, placing in issue the material fact allegations of the petition, admitting, however, the status of Joseph M. A j ello and William L. Hemsworth as members and officers; admitting also that following the calling of the meeting to order the petitioner A j ello made various statements concerning the membership list and asked questions concerning the books and records but that he failed, however, to direct any questions pertaining thereto to the secretary of the Organization, the petitioner Hemsworth; admitting further that the meeting was well attended and the meeting rooms were crowded. The respondents further deny all of the allegations in paragraph “11” of the petition, asserting, however, that a motion was made by a person not qualified as a member to adjourn the meeting and that the motion was improperly before the meeting despite requests by qualified members demanding to be heard on a point of order and alleging that the motion to adjourn was arbitrarily determined by the president A j ello to have been carried despite the fact that the volume of the voice vote was contrary to the adoption of the motion and without consideration of the point of order pressed by qualified members before the vote. The answer further denies the allegations in paragraph “ 12 ” of the petition and alleges that after the improper determination of the motion to adjourn the petitioner president absented himself from the platform and failed to carry on the meeting and alleging further that the chairman of the board of directors, Joseph A. McKinney, pursuant to the by-laws of the Organization, assumed the chair, filled the vacancy and assumed the duties and powers of the president and continued the meeting until the purposes of the meeting were fulfilled by the election of officers and directors. The answer further denies the allegations set forth in paragraph “ 14 ” of the petition and asserts that a quorum was present and alleges that no roll call was necessary pursuant to the by-laws and that no proper objections were taken at any time by anyone present to the qualifications of any person nominating, seconding or voting during the progress of the meeting. The answer further denies the allegations contained in paragraph “ 15 ” of the petition, and asserts that proper and sufficient notices were sent to all persons entitled *1029 to receive same and that petitioner Joseph Ajello called the meeting to order without any question or contest concerning the sufficiency of the notices and further alleges that ‘1 said meeting being one of the best advertised and best attended meetings in the history of the Organization.” The answer further sets up two separate and distinct defenses, the first, that the petition is insufficient as a matter of law and that the allegations thereof consist of conclusory statements and fails to properly plead or set forth allegations of fact. The second, that the subject matter set forth in the paragraphs of the petition fails to establish a proper cause for the intervention of this court in the proceedings of the voluntary association, which proceedings were conducted pursuant to proper and sufficient constitution and by-laws not in contravention of any statutes of the State of New York. Thus, in substance, are the qontentions of the parties to this proceeding.
Under the circumstances, it appears to this court that the following matters are to be considered by the court:
1. Was the meeting regularly and properly called pursuant to notice?
2. Was it duly and regularly adjourned and the member making the motion to adjourn a duly qualified member of the Organization?
3. Was the meeting properly continued and the ensuing election legal and valid?
4. Is this court empowered to interfere with the internal affairs of a membership corporation in connection with its proceedings if adopted pursuant to its constitution and by-laws and not in contravention of any State statute ?
With respect to the first item to be considered, it is apparent from the papers before me and the exhibits submitted on the motion that despite the alleged failure of the secretary to obtain the membership list, a notice dated December 29, 1960, of the time and place of said meeting and the purposes thereof with a subscription in type of the names Joseph A. McKinney, chairman of the board of directors, and Wm. L. Hemsworth, secretary, with a postscript stating “ 1960 membership cards must be exhibited for admission ” was mailed to the membership. It is not conceded by petitioners that it was sent to all members but it is not denied that it was sent. By a strange circumstance a further exhibit in the form of a notice of a meeting of the Organization with the date specified and the place thereof, including a statement, i.e., “ since opposition to my re-election is planned, I respectfully request your attendance and continued support. With kindest personal regards, I am Joe, Joseph M. *1030 Ajello, Pres.” was apparently mailed by the petitioner president in this proceeding to the membership. No objection is raised by respondents as to this fact but no elaboration is afforded the court as to what list, if any, of membership was used by petitioner president.
In the absence of a specific showing by the secretary that he had and kept possession of a roll of the members for some time prior to the meeting and held dominion thereof, which by some affirmative act of respondents or those acting for or under their direction deprived him of that possession, I am left with no alternative except to conclude that he was neither impressed with his duties imposed by article V of the constitution and by-laws, nor concerned with where the roll of members reposed. Despite the denial of possession of the roll of members and his failure to send appropriate notices, which was his duty, this court cannot overlook his inertia prior to the meeting to take proper legal steps to acquire the roll of members.
There is no gainsaying the fact that two notices were sent to membership and this court must assume from the assertions in the papers that not only the first notice allegedly bearing the typewritten signature of the chairman of the board of directors and the secretary, but also the second notice by the president, gave fair notice to the membership. The assertion by the respondents in their answer that the meeting was “ one of the best advertised and best attended meetings in the history of the Organization ” is borne out by the publicity in the press and the interest engendered and attendant upon the friction and controversy between the opposing parties and factions.
Is it not a fact which most assuredly cannot be denied that the president petitioner himself injected in the notice sent by him this very factual situation referred to above 1 It must be assumed therefore from all of the facts and circumstances set forth in the papers that fair notice was given to all of the membership of the Organization.
The petitioners’ papers refer to the use of fair treatment. It strikes me upon consideration of all of the matters herein that the question of fairness as to notice and procedure applies with equal force to both sides of this controversy. As an aside, the matter seems to be not so much fair treatment or fairness but whose fairness should prevail. With respect to fairness, what one side considers fair is not to be the yardstick but fairness in the overall should control.
The papers show and it is not denied that two members of the Organization were at the door of the meeting hall and its environs who demanded the production and exhibition of member *1031 ship cards before admission to the meeting and this matter is affirmed by affidavit of these members.
With respect to the question of a quorum present, the papers contain sworn affidavits on both sides of more than 70 individuals certifying that they were duly qualified members of the Organization and present at the meeting. No reasonable objection appears in the papers as to this fact and since the constitution and by-laws, article VI thereof, provides that 15 qualified members shall constitute a quorum and since, concededly, the Organization must have more members than that, it does not follow that there has been a violation of the constitution since a sufficient number were present to constitute such quorum. In fact, neither side has expressed an opinion in the papers as to the number of the membership and absent thereof the court must accept the facts with respect to membership as it finds them to be and cannot rely on exorbitant claims of membership or lack of membership at the meeting. Reason, common sense and experience teaches that there is generally present at a meeting of an organization, such as the instant one, because of the interest aroused, many individuals who are not members, gathered there for the purpose of observation but in fact it is apparent from the papers on this motion more than a sufficient number to constitute a quorum were present.
The contention of the illegality of the notice of the meeting or failure of notice of a meeting is outweighed by the facts, and the calling of the meeting to order by the president constitutes a waiver of the alleged illegality of the notice in the absence of the president’s action to, by affirmative act, take any steps with respect to the authority or right of the individuals present to attend at said meeting. While I do not hold with the reasoning of the respondents in this proceeding that the constitution makes no provision for notice of a meeting, nevertheless, the facts and circumstances clearly indicate that sufficient and fair notice was given to the membership, whatever number there may be. The petitioners in their papers submit affidavits setting forth no knowledge of the receipt of a notice but each and every affiant clearly indicates a source from which knowledge of the meeting was gleaned, with the exception of a few individuals who denied receipt of such notices, and here I must pause and remark that none of these few individuals affirmatively assert membership in the Organization. It is apparent to this court that notice of the meeting was widespread. In an affidavit by petitioner Ajello, he asserts that 10 days before the meeting, because of the illness of the secretary, he attempted to obtain books and records of the Organization to no avail. Was he estopped? Of *1032 course not. He could have sought proper remedy at the instance of a court for the production of such books, records and membership list. Failing such action, he ascended the chair, called the meeting to order, and took no affirmative steps to follow the procedures set forth in article V of the constitution and to abide by such duties. Instead, as disclosed by the papers, he launched into matters foreign and extraneous to the purposes of the meeting, which was an annual meeting to be held the first Tuesday in January in each year, at 8 o’clock in the evening, for the election of officers and directors, nor did he proceed pursuant to the provision of article V of the constitution and by-laws of the Organization with respect to the matters enumerated thereunder. There is no reference in article VI of the constitution and by-laws with respect to the order of business to be held at such annual meeting. However, reasonable application of the order of business at a regular meeting of the Organization pursuant to article I of the by-laws should apply and the purpose of the meeting carried out pursuant to article IV of the constitution. No provision in the constitution or the by-laws provides for a roll call of the membership of the Organization but reasonable inquiry or knowledge on the part of the official presiding at the meeting of the number of members required under article VI of the constitution to constitute a quorum should be ascertained in some fashion. Nowhere does the petitioner president allege that he exercised all the usual functions of a presiding officer as prescribed by Cushing’s Manual (constitution and by-laws, art. V).
For the reasons advanced hereinabove, the first question considered by the court must be answered in the affirmative.
We turn now to consideration of the second matter propounded by the court. Having determined that the meeting was duly and regularly noticed and called to order by the president, was the meeting regularly adjourned! It is conceded that after certain heated discussion took place, in which the president and others were involved, the chair recognized a motion to adjourn offered by Jerome M. Neuberger, Esq., which was seconded and declared by the president presiding to be carried. Objection, however, by respondents is made to the legality of the adjournment and to the authority of Mr. Neuberger to make such a motion, setting forth a claim that he was not a member of the Organization and consequently had no right or standing to so move. It is to be noted that in connection with the motion to adjourn the president called for a voice vote and the respondents claim that there were more nays than ayes. Assuming arguendo, in connection with the question of fairness that the *1033 motion was properly made by an authorized member of the Organization, the confusion which existed at the meeting could have been resolved then and there had action been taken by the president by secret ballot, first ascertaining the status of those present and a fair determination made as to whether the motion was carried or not. Such action, however, was not taken, nor was the president concerned with the authority of the movant to make such motion to adjourn.
It strikes this court that the act of the president in resolving the motion to adjourn, that not much fairness was exhibited by him and that his act was hasty and precipitative. On the other hand, in connection with the authority of Mr. Neuberger, the facts do not bear out his contention that he was a bona fide member of the Organization. It cannot be contended on the one hand that the constitution and by-laws should have effect as to notice and on the other hand the same document be disregarded with respect to membership. Mr. Neuberger asserts his membership in an organization known as the ‘1 Young Democrats ” and that by virtue of such membership in that organization he automatically becomes a member of the Organization. Despite the claims of Mr. Neuberger and the proof which he offers to sustain his contention that he is a member of the Organization, the fact remains that there is a total violation on his part to show compliance with article VII of the constitution or article II of the by-laws. The conclusion that the court reaches, despite the protestations of Mr. Neuberger, is that whatever status the association of which he is a member may be, it cannot be deemed that he becomes automatically a bona fide member of the Organization absent such provision in its constitution and by-laws.
The court further cannot consider an alleged interrelationship between an organization of the character in which Mr. Neuberger is a member with an incorporated body formed pursuant to law, which specifically designates in its constitution and by-laws certain requirements for eligibility to membership in the Organization. Statements by individuals as to his membership are not sufficient to incorporate a finding by this court as to his actual membership in the Organization.
In connection with membership, we have another strange circumstance, in that membership cards attached to an affidavit of Mr. Neuberger show that these cards were signed by Mr. Ajello, the president. This procedure is in direct contravention of the constitution, which specifically provides in connection with the duties of the treasurer that he “ shall issue a membership card to all members on payment of dues assessed.” (Const., arts. V, *1034 VII.) These cards clearly indicate the following: “Membership card not valid unless signed by Treasurer.” It can reasonably be inferred that, if certain individuals claim membership by reason of the cards signed by Mr. A j ello, there were more of the same issued to others. It is apparent to the court that from all of the facts and circumstances alleged, much depends upon the question of whose “ ox was to be gored ”. The court assumes that Mr. A j ello had no constitutional right to issue membership cards or that such issuance conferred membership upon the holders.
It is unnecessary, in view of the foregoing reasoning, and in fact, impossible of determination to consider certain statements in respondents ’ affidavits with respect to points of order because of the lack of reference thereto in alleged minutes of the meeting submitted by the secretary as an exhibit attached to the original petition. In this connection also statements were made by the respondents that such points of order were raised. Petitioners’ papers deny the making of said motions of points of order. In any event, this court considers this matter of points of order academic in view of its conclusion infra.
Therefore, the second question propounded by the court must be answered in the negative.
With respect to the third question, there is no doubt but that the president upon his declaration of the adjournment of the meeting abdicated the chair which automatically by such action became vacant. The constitution specifically provides (art. Ill) that “ in the absence of the President the Chairman, Board of Directors, shall fill the vacancy, and shall assume the duties and be vested with the powers and prerogatives of the President during such absence. ’ ’
Concededly, from the papers, Mr. Joseph A. McKinney, the chairman of the board of directors, assumed the duties of the president in the absence of the president in the chair, even though the president was physically present and continued the meeting under his constitutional right and carried out the purposes of the meeting pursuant to article IV of the constitution and proceeded to the election of officers pursuant to article III of the constitution.
The petitioners raise no question in connection with the proceedings which were continued by the chairman of the board of directors except an alleged claim of illegality of such proceedings because of the alleged valid adjournment of the meeting. With this reasoning this court cannot agree and the third question must be answered in the affirmative.
*1035 Considering question number 4, this court believes that in the absence of fraud, overreaching, or direct violations of constitutional or by-law proceedings, or the deprivation of lawfully constituted members of their right to vote, it should not intervene. No State statute has been set forth by the petitioners which was allegedly violated and interference in the internal affairs of an organization should not be the object of a court.
Many allegations have been set forth in the petition and the papers in this matter which are conclusory in nature and contain no material fact allegations sufficient to sustain the relief requested. I must conclude from all of the facts and circumstances in this case that valid, fair and sufficient notice of the meeting and its purposes was given to the membership, that the meeting was improperly adjourned, that the person making such motion was unauthorized, that the proceedings taken subsequently and at the continued meeting were constitutionally, fairly, and honestly administered and that this court under all of the facts and circumstances should not interfere with the contentions and quarrels of opposing factions within an organization, if it concludes that the proceedings were in accordance with the proper provisions of its constitution and by-laws. The court having so concluded, it shall not substitute its judgment for that of the regular proceedings of the officers and members of the Organization itself.
Therefore, for the reasons advanced, the fourth question is certified in the negative.
The petitioners have requested a hearing with respect to the matters presented to the court. To grant this request no useful purpose would be served. The petition, answer and papers sworn to, were skillfully, and in some instances, artfully drawn, fully informative and presented the issues involved with great particularity and minute detail. A hearing would tend to produce nothing further, in the opinion of this court, except possibly further affirmation and denials already evident in the papers with no appreciable change of circumstances.
Accordingly, a hearing is denied, the petition is dismissed in all respects and the stay vacated.